Rhodes v. Town of Brightwood.

RHODES *v.* TOWN OF BRIGHTWOOD.

[No. 17,472.    Filed May 8, 1896.]

DEDICATION.—*Park.*—*Municipal Corporation.*—An irrevocable dedication of land is effected by designating certain land on a map filed in the county recorder's office as a "park," and by selling lots with reference to the map.

SAME.—*Parol Evidence.*—Where a dedication of a tract of land is express, evidenced by a recorded plat, the intent, as expressed by such plat, cannot be contradicted by parol evidence.

SAME.—*Irrevocable After Private Rights have Accrued.*—A dedication of land to public use is not revocable after private rights have accrued by reason thereof.

SAME.—*Municipal Corporation Trustee for Public.*—*Change of Trustees.*—Where there has been laid out and filed a plat of land as an addition to a city, upon which plat a portion of the land is designated as a park, and there has been a sale of lots in reference to the plat, the dedication of the "park" thus effected is to the public, and may be asserted by a town subsequently incorporated, which annexes such addition to its corporate limits, for a change of trustees does not defeat the dedication.

ESTOPPEL.—*Dedication.*—*Unauthorized Taxation.*—*Municipal Corporation.*—A municipal corporation is not estopped to assert a dedication of land, by the unauthorized taxation thereof to the original owner, after dedication.

From the Marion Circuit Court.  *Affirmed.*

*J. C. Green,* and *Lamb & Hill,* for appellant.

*Kealing & Hugg,* for appellee.

HOWARD, J.—This was an action, brought by the appellant to quiet his title to a certain square of ground, situated within the corporate limits of the appellee town of Brightwood.

There were two trials of the cause.  The first trial, before the regular judge of the court, resulted in a finding and judgment in favor of the appellee.  On a new trial, granted as a matter of right, under the statute, the cause was tried by the special judge below, and also resulted in a finding and judgment for the appellee.

The questions arising on this appeal require a decision as to the correctness of the court's action in overruling the appellant's motion for a new trial.

It appears, from the evidence, that on the 19th of October, 1872, Sheldon Morris and Bennett F. Morris filed in the office of the recorder of Marion county a plat of their Oak Hill addition to the city of Indianapolis, subdividing a fifty-acre tract into one hundred and seventy-four lots and two blocks.  One of the blocks was designated "A," and the other was named "Morris Park."  The latter contained about three acres, and is the land in controversy.  It does not appear that the city of Indianapolis ever accepted the proposed addition or extended its jurisdiction over the platted territory.

On April 11, 1876, the town of Brightwood was incorporated; and on January 15, 1880, the town annexed the said Oak Hill addition to its corporate limits, the plat lying adjacent both to the city of Indianapolis and to the town of Brightwood.

In 1876, Morris Park was enclosed with a fence by

Rhodes v. Town of Brightwood.

Sheldon Morris, and used by him as a pasture. On May 16, 1878, Bennett F. Morris conveyed his interest in Morris Park to Sheldon Morris, and the appellant claims title through *mesne* conveyances from Sheldon Morris.

The appellant contends that these facts do not show any dedication of Morris Park to the public, or, if there was such dedication, that it was never accepted by the public until after the donors had revoked the dedication and resumed dominion over the property.

The appellee, on the other hand, contends that the filing of the Oak Hill plat in the recorder's office was an express dedication to the public of the streets, alleys, and public grounds thereon designated, including Morris Park; and that while a person might call his property a park, and such naming of it would not constitute a dedication, yet, when he subdivides the property and places his plat of record, marking parts of it as streets and alleys, and one part of it as a park, and then sells lots with reference to this plat, that the rights of both the public and the purchasers of lots intervene, and thereafter the dedication is irrevocable.

We are of opinion that the contention of the appellee is the law, and must prevail.

In Dillon Munic. Corp. (4th ed.), section 644, it is said that, "The doctrine of dedication to public uses has also been extended and applied to *public squares* in cities and villages, these being regarded as easements for the benefit of the public; and the fact of dedication may be established in the same manner as in the case of highways and streets."

And in section 645, the author says: "Where the words *'public square' are used on a plat,* that is an unrestricted dedication to public use."

Numerous authorities are cited in the notes to the propositions, among them, *Doe* v. *Town of Attica,* 7 Ind.

641; *Commonwealth* v. *Rush*, 14 Pa. St. 186, and *Abbott* v. *Cottage City*, 143 Mass. 521, where the cases are collected. In these, and other cases cited, it is held that dedication is shown by spaces on plats designated by the words park, public square, public ground, common, county block, college square, plaza, place, etc.

"Whenever a public square or common," it is said in *Abbott* v. *Mills*, 3 Vt. 521, 526, "is marked out or set apart as such by the owners or proprietors, and individuals are induced to purchase lots or lands bordering thereon, in the expectation held out by the proprietors or owners that it should so remain, or even if there are no such marks placed on the ground, but a map or plan is made, and village lots marked thereon, and sold, as such, it is not competent for the proprietors or owners to disappoint the expectations of the purchasers by resuming the lands thus set apart, and appropriating them to any other use."

Mr. Dillon adds: "The word 'park' written upon a block upon a map of city property indicates a public use; and conveyances made by the owners of the platted land, by reference to such map, operate conclusively as a dedication of the block." Citing *Price* v. *Plainfield*, 40 N. J. L. 608; *Maywood Co.* v. *Maywood*, 118 Ill. 61.

Even where dedications by maps and plats are so made as to render it difficult to determine their nature and extent, it is a safe general rule, as said in Elliott Roads and Sts., p. 111, "to resolve doubts in such case against the donor, and, within reasonable limits, to construe the dedication so as to benefit the public rather than the donor. Naturally, the presumption is, that one who records a plat, and marks upon it spaces that appear to form no part of any of the platted lots, dedicates the land represented by the spaces thus ex-

cluded to a public use." See also *City of Indianapolis* v. *Kingsbury*, 101 Ind. 200; *Miller* v. *City of Indianapolis*, 123 Ind. 196.

And in *Doe* v. *Town of Attica*, cited above, it was held by this court that, even though the recorded plat did not show any words of dedication, yet where the proprietor, after the recording of his plat, went about exhibiting to the citizens of the town a plat on which certain lots were marked "public square," the map so exhibited was evidence of dedication.

In the case at bar, not only was there an express dedication of Morris Park upon the recorded plat, but evidence was given to show that lots were sold with reference to this plat, the park being specifically pointed out to the purchasers at the time, and prices being fixed upon the lots in proportion to their nearness to the park.

Even if there had been no express dedication of the park, we are of opinion that this conduct of the proprietors, in making sale of their lots on the faith of the proximity of a public park, would constitute an implied dedication. Dill. Munic. Corp. (4th ed.), section 640; Elliott Roads and Sts., 112.

It was said in *Miller* v. *City of Indianapolis, supra:* "Marking a street upon a plat of an addition to a town or city, and selling lots with reference thereto, constitutes a dedication. *Faust* v. *City of Huntington*, 91 Ind. 493 ; *City of Evansville* v. *Page*, 23 Ind. 525; *City of Logansport* v. *Dunn*, 8 Ind. 378; *City of Indianapolis* v. *Kingsbury, supra.* As to whether a plat contains an express dedication of a strip of ground to the public, as a street, is a matter of law for the court. *Hanson.* v. *Eastman*, 21 Minn. 509; *Yates* v. *Judd*, 18 Wis. 126; *Sanborn* v. *Railway Co.*, 16 Wis. 20. In *City of Indianapolis* v. *Kingsbury, supra*, it was said by this court: 'But the inten-

tion to which courts give heed is not an intention
hidden in the mind of the land-owner, but an inten-
tion manifested by his acts. It is the intention which
finds expression in conduct, and not that which is
secreted in the heart of the owner that the law re-
gards. Acts indicate the intention; and upon the in-
tention, clearly expressed by open acts and visible
conduct, the public and individual citizens may act.
*  *  *  The question whether a person intends to
make a dedication of ground to the public for a street
or other purpose must be determined from his acts
and statements explanatory thereof, in connection
with all the circumstances that surround and throw
light upon the subject, and not from what he may sub-
sequently testify as to his real intention in relation to
the matter.' *City of Columbus* v. *Dahn*, 36 Ind. 330;
*Lamar Co.* v. *Clements*, 49 Tex. 347; *City of Denver* v.
*Clements*, 3 Col. 484. An implied dedication may be
rebutted by parol testimony; but where the dedica-
tion is expressed, evidenced by a recorded plat, the
intent, as expressed in such plat, cannot be contra-
dicted by parol. *City of Indianapolis* v. *Kingsbury,
supra*, and authorities there cited."

The foregoing reasoning of Judge Coffey, fortified
as it is by the numerous authorities of this and other
States there cited, seems conclusive as to almost every
contention, made by counsel for appellant, in the case
at bar.

As to what conduct on the part of the proprietor
will constitute an implied dedication of land for pub-
lic purposes, see further, Elliott Roads and Sts., 132;
Dillon Munic. Corp. (4th ed.), section 636; *City of Co-
lumbus* v. *Dahn, supra; Lake Erie, etc., R. R. Co.* v.
*Town of Boswell*, 137 Ind. 336, at 342.

The cases relied upon by appellant are not, as we

think, in conflict with the conclusions which we have reached in this case.

In *Westfall* v. *Hunt*, 8 Ind. 174, it appeared that the proprietor of the town of Thorntown, being desirous of having the county seat of Boone county located in that town, marked a public square on the plat for the county buildings. The commissioners, however, chose Lebanon as the county seat; and it was held that the square having been dedicated for a purpose that was not accepted by those in whose interest it was made, the land reverted to the donor. There was no evidence that the land was dedicated to the public generally, but only for the specific purpose indicated. It has always been the law, that no dedication can be complete without an acceptance by those in whose favor the dedication is made. A dedication is, in some sense, a contract; and the public, or others interested, cannot be compelled to accept a dedication merely because it is made in their favor. Elliott Roads and Sts., 113. However, in case private rights accrue by reason of the dedication there can be no revocation. Dillon Munic. Corp., section 632. As to acceptance of dedication, see further, *Mansur* v. *State*, 60 Ind. 357; *City of Chicago* v. *Drexel*, 141 Ill. 89.

The case of *City of Logansport* v. *Dunn, supra*, also relied upon by appellant, is, as we think, an authority against his contention. It was held in that case that the laying out of an addition to a city by the owner of adjacent lands; the recording of a plat thereof, and the sale of lots with reference to such plat, operate as a dedication to public use, of all streets, alleys, and other grounds, clearly designed to be so appropriated. Also, that the designation upon such plat, of a lot or space, as a site for a church, seminary, market, or common, operates as a dedication of the same to the public, for such purpose.

It is true, that in that case the court said that, "whether by inserting the words 'Spencer square' in an open space on the map of the town, the proprietor intended to dedicate the ground to public use, was a question of fact to be found by the jury." But even if this were a correct statement of the law, the case can not be authority in favor of the appellant. The court there added: "The evidence on this point was conflicting, and was obviously of such a character that an appellate court would not be authorized to disturb their verdict, which ever way it might have been." In the case at bar, the trial court, on the evidence submitted, found that, by inserting the words "Morris Park" in an open space on the recorded plat, the proprietors did intend to dedicate the ground to the public use; and, by the authority cited, we are therefore not authorized to disturb that finding.

In *Scantlin* v. *Garvin*, 46 Ind. 262, the remaining authority relied upon by appellant, it appeared that the original town plat of Evansville contained a statement, written at the foot of the plat, to the effect that a certain part of the platted land was "reserved for a public square." Afterwards, the county commissioners accepted a proposition to locate the county seat of Vanderburgh county at Evansville and to erect the county buildings upon the said public square. Subsequently, in pursuance of the agreement by which the public square was taken for the county seat, the proprietors, by a deed absolute, and without any conditions, deeded to the county agent, "to and for the sole use, behoof and benefit of the said county of Vanderburgh," that part of the square in controversy in that case, together with a large number of other lots in the town. The court held that the county received an absolute title in fee-simple to the land in dispute, and that the words, "reserved for a public

square," written at the bottom of the plat, indicated not a dedication, but a reservation. The purpose for which the square was reserved was accomplished by the establishment of the county seat upon the grounds; and the subsequent conveyance of the full title of a part of the property gave to the county unconditional right to dispose of the land or use it in such manner as might be for the "behoof and benefit of the said county." There can be no question that the title of the county to the land so conveyed became perfect, and the county might therefore dispose of the property as it deemed best. *Newpoint. Lodge* v. *School Town of Newpoint,* 138 Ind. 141.

In the early organization of counties and the location of county seats, the words "public square" had a special reference to the location of the court house and other county buildings. This meaning was attached to those words in the case last cited, as well as in the case of *Westfall* v. *Hunt, supra,* and the court simply held that the dedication was limited to the purposes for which it was made.

In the case at bar, the ground in question is designated as a "park." That word has a definite and well recognized meaning, that is, a pleasure ground for the recreation and enjoyment of the people of the city or town in which the park is situated. The interests of the public in such pleasure ground are just as real as their rights to the use of the streets and alleys of the city or town. The cases cited are not in point.

As to the contention that the appellee town is estopped from claiming that the park is public property, for the reason that the tax officials assessed and collected the taxes and street assessments thereon, it may be said that the record shows that from the year 1872, when the plat was recorded, until the year 1878, the park was not placed upon the tax duplicate, al-

though during that period the remaining lots of the addition owned by the proprietors were regularly assessed. This is rather an indication that all parties concerned understood at, and for years after the time of the recording of the plat, that the land was dedicated to the public for a park, as shown on the plat. Indeed, the failure of the public authorities to place the park lands upon the tax duplicate, may be regarded as evidence of express acceptance by the public of the dedication of the park. The fact that the ground was afterwards placed upon the duplicate by the county treasurer, and taxes and assessments collected against it, could not deprive the public, or those who had purchased lots with reference to the plat on which the park was shown, of rights which they had previously acquired by reason of the dedication. The authorities are to the effect that such unauthorized taxation of public property has no effect on the status of the property, or upon the rights of the public or of individuals in relation to it.

In *Town of San Leandro* v. *Le Breton,* 72 Cal. 170, a similar contention was made as to taxes and street assessments levied upon property which had been dedicated to the public, and the court said: "That when the block was dedicated to the use of the public as a public square it became a part of the public grounds of the town, and could not be legally assessed or taxed for State, county, or municipal purposes; and the erroneous action of officials in the respects named could not impair the rights of the public, or confer rights upon the defendants. The doctrine of estoppel has therefore no application." To the same effect see *Ellsworth* v. *City of Grand Rapids,* 27 Mich 250; *Getchell* v. *Benedict,* 57 Ia. 121.

Of course, nothing here said is to be taken as holding that a dedication of public grounds may be made

against the consent of the public. To make the dedi-
cation complete there must always be an acceptance,
express or implied. The facts in this case show, if not
an express, at least an implied acceptance by the
public.

Another contention made by counsel is that the ad-
dition in which Morris Park is situated was made to
the city of Indianapolis, and not to the town of Bright-
wood, and that the town has, therefore, no claim upon
the ground so dedicated. Counsel forget that the
dedication was made for the use of the public, and
particularly the property-owners and residents in the
addition itself. The appellee town is but a trustee
for the public. Any individual having a particular
interest in the park might have taken the proper steps
to maintain the dedication if the town, as trustee, had
failed to do so. *Fossion* v. *Landry*, 123 Ind. 136; *Le-
Clercq* v. *City of Gallipolis*, 7 Ohio 218; *Trustees of
Watertown* v. *Cowen*, N. Y. Ch. 4 Paige 510; *Price*
v. *Plainfield, supra.*

In Elliott Roads and Sts., 88, the author says: "A
dedication, either statutory or common law, to a pub-
lic corporation is not lost by changes in the form of the
corporate government, nor by changes in its terri-
torial boundaries. * * * Towns, townships, and
cities are but trustees of the public, and, as in cases
of ordinary trusts, the public trust is not defeated by
a change of trustees. Public corporations of the
classes mentioned are governmental subdivisions, and
changes in their forms, powers, and obligations do not
deprive the public of their rights in public easements,
nor in public property, such as schoolhouses, public
squares and the like." See also pp. 108 and 118 of
the same work.

Complaint is also made of the exclusion of certain
evidence; chiefly that offered to show the intention of

the proprietor as to the dedication. We think, however, that what we have already said, particularly what is cited from *Miller* v. *City of Indianapolis, supra,* covers this question. Some minor questions, also, discussed by counsel, are, we think, fully covered by what we have said and by the authorities cited.

Other authorities sustaining the views which we have maintained in this case are: *Archer* v. *Salinas City*, 93 Cal. 43 (16 L. R. A. 145); *Trustees M. E. Church* v. *Hoboken*, 33 N. J. L. 13; *Huber* v. *Gazley*, 18 Ohio 18; *Hoadley* v. *City of San Francisco*, 124 U. S. 639; *Town of Marion* v. *Skillman,* 127 Ind. 130; *President, etc.*, v. *White*, 31 U. S. (6 Peters) 431; *Shea* v. *City of Ottumwa*, 67 Ia. 39.

Judgment affirmed.