## JOHN B. HITCHCOCK v. THE CITY OF OBERLIN.

1. OBSTRUCTION OF STREET — *Injunction* — *Sufficient Petition.* In an injunction proceeding by a city of the third class to enjoin an interference with an alleged public street therein, a petition which alleges that the strip of ground in controversy is a street in Rodehaver's addition to said city, and within the corporate limits thereof, and under its control, sufficiently locates said alleged street, and shows that the city has jurisdiction over the same.

2. ———— *Evidence.* The objections to the admission of certain testimony examined, and *held,* that under the circumstances of this case the admission of the evidence complained of does not constitute material error.

3. ———— The evidence in the case examined, and *held* sufficient to uphold the judgment therein.

*Error from Decatur District Court.*

INJUNCTION.　Judgment for the plaintiff *City*, at the April term, 1888.　The defendant, *Hitchcock*, comes to this court. The opinion states the facts.

*A. G. McBride*, and *S. D. Decker*, for plaintiff in error.

*S. W. McElroy*, for defendant in error.

Opinion by STRANG, C.: This is a proceeding in injunction, commenced by the city of Oberlin to enjoin the plaintiff in error from interfering with a certain alleged street in said city.　In June, 1879, Hitchcock and others purchased a piece of ground of Rodehaver, for the purpose of platting it as an addition to said city of Oberlin.　They organized, and obtained a charter from the state granting them corporate powers, under which they platted said ground, dividing it into lots and blocks, with streets and alleys, and filed said plat for record. Running east and west along the north side of said land, as platted, was left a strip of ground 85 feet wide.　The word "north" was written on that part of the plat representing said strip.　The contention of the city of Oberlin in the court below was, that said strip left on the north side of said plat and marked with the word "north" was created a street, and named North street on said plat.　The defendant below denied that such strip was a street, and claimed that, having commenced platting on the south side, and surveyed the ground into blocks and streets until they reached the north side, they had the strip in controversy left; that it was not wide enough for blocks, and was left temporarily with the view of obtaining more land adjoining it of Rodehaver, sufficient for a tier of full blocks, when they intended to block and lot it the same as the residue of the land, but, not obtaining any more of the land, the strip simply lay unplatted. They claim that the word "north" written on that part of the plat was not written there as and for the name of a street, but simply to designate the point of compass.　The matter

was heard by the court, which rendered a judgment perpetuating the injunction, and for costs. Motion for new trial was overruled.

The first assignment of error is based upon the action of the court in overruling the objection of the plaintiff in error to the reception of evidence under the petition as finally amended. Counsel allege that the petition does not show where the strip of land claimed by the city to be a street was located. It is claimed that the petition must allege that the strip was a public highway and located within the city limits. Conceding this to be the law, an examination of the petition shows that the position of the plaintiff in error is untenable. The petition alleges that the strip in question is a street in the city of Oberlin, and within the corporate limits of said city, and under the control thereof.

The second error alleged consists in the action of the court in allowing John Wilson and others to testify to what John Rodehaver had said and done in connection with the sale of certain lots he had sold in and out of the addition heretofore mentioned. Rodehaver was a member and director of the corporation that owned the addition. He acted as salesman for said corporation in selling lots in said addition, and the court permitted Wilson and others who had purchased lots from said corporation through Rodehaver to testify to what Rodehaver said about the strip of land lying on the north side of said addition at the time, and when he was selling said lots to them. They testified that Rodehaver told them at such time that said strip of land was a street — was North street. Some of said parties purchased lots in the addition fronting on said strip of land that Rodehaver represented was North street, and say that they purchased on the strength of such representations so made by Rodehaver that such strip was a street, and that they would not have purchased but for the belief of said representations that the strip was a street. We think the evidence was entirely proper. Rodehaver was not only an officer of the corporation which had platted and which owned the addition, including the strip in controversy,

but he was, at the time of making the representations, presumably, the agent of said corporation for the sale of its lots; at least, he was acting as such, and the representations reproduced were made in connection with his sale of the lots.

There was another class of testimony admitted that does not come so clearly within any rule of evidence. Rodehaver owned the land directly north of the 85-feet strip; and he was selling lots on his side of the strip and facing the same, and in connection with the sale of these lots he also represented that the 85-feet strip was a street. The court allowed these representations to be proven. In the sale of these lots he was acting for himself, and his statements that the strip was a street were, so far as the question involved in the case is concerned, but the statements of an officer of the corporation. If he had been a principal officer of the corporation, such as president, his statements would probably have been evidence; but he was only a director of the company. There was but little of this evidence, and, when received, the court said it wanted to hear all about the matter. And when the defendant offered like testimony the court received it, going so far as to let the defendant below prove his own statement to his hired man, to the effect that the strip was not a street. There was much more evidence of this kind introduced by the defendant below than by the plaintiff. The case was being tried by the court, which evidently gave evidence of this character little weight. There was other proper evidence sufficient to sustain the judgment of the court. The acting secretary of the corporation testified that, at a meeting of said corporation for the purpose of dividing among the members of the corporation what lots were left unsold, so as to close up the business of the corporatain, this 85-feet strip was, by the members of the corporation, called North street, and was by them at that time treated as a street; that there was no attempt to, or talk about dividing the strip while they were engaged in dividing the lots, but that lots facing the strip were mentioned and talked about as facing North street. It was also proved that houses had been built on both sides of said strip; that fences had been erected,

and trees set out in line with the strip as a street, and that
such fences and trees had been in existence for several years,
during which the plaintiff in error, who was the chief officer
of the corporation, had resided in the city of Oberlin, and
necessarily near to the alleged North street. It was also
shown that, from the date of the platting of the ground con-
stituting the addition, the said strip had been used as a high-
way by the public. The city authorities treated it as a street
by building small bridges or sluice-ways thereon, in order to
render it passable. In view of all this evidence in support
of the judgment of the court, we do not think the liberality
of the court in the reception of evidence constitutes material
error, especially as such liberality was exercised in behalf of
the plaintiff in error to even a greater extent than it was in
behalf of the defendant in error.

"Dedications by maps and plats are sometimes so made as
to render it difficult to determine their nature and extent.
We think it a safe general rule to resolve doubts in such cases
against the donor, and, within reasonable limits, to construe
the dedication so as to benefit the public rather than the donor.
Naturally the presumption is that one who records a plat, and
marks upon it spaces that appear to form no part of the plat-
ted lots, dedicates the land represented by the space thus ex-
cluded to the public use."

(Elliott, Roads & Streets, 111; *City of Denver v. Clements*,
3 Col. 484; *Noys v. Ward*, 19 Conn. 250; *Hanson v. Eastman*,
21 Minn. 509; *Sanborn v. Chicago*, 16 Wis. 19; *Yates v. Judd*,
18 id. 113.)

We think the judgment is supported by sufficient evidence.

We recommend that the judgment of the district court be
affirmed.

By the Court: It is so ordered.

HORTON, C. J., and JOHNSTON, J., concurring.

VALENTINE, J.: I concur in the decision of this case.
This court has always been liberal in sustaining dedications
of property for public purposes, however made, and in sus-
taining them as intended by the dedicator or proprietor.

(*Comm'rs of Franklin Co. v. Lathrop*, 9 Kas. 453; *Cemetery Association v. Meninger*, 14 id. 312; *Comm'rs of Wyandotte Co. v. Presbyterian Church*, 30 id. 620; *Brooks v. City of Topeka*, 34 id. 277; *Comm'rs of Miami Co. v. Wilgus*, 42 id. 457; *Hayes v. Houk*, 45 id. 466; 25 Pac. Rep. 860.) But where property has never been dedicated at all for any kind of public purpose, by any word, act, sign, figure, map, plat, field-notes, or acknowledgment, as was the case in the case of *Fisher v. Carpenter*, 36 Kas. 184, this court does not hold that there has been any dedication; and it certainly does not hold that there has been a dedication for some specific or particular purpose, as for a public street. In the case last cited, the plaintiff in the trial court, Carpenter, commenced his action against the defendant, Fisher, to restrain and enjoin him from obstructing a piece of ground 250 feet in length east and west, 34 feet in width at the west end and 89 feet in width at the east end, upon the sole ground that it was a public street. Carpenter was and is a private individual, having no interest in any of the property platted as Fisher's addition, of which it is claimed by Carpenter that this piece of ground constitutes a part. Now, if this piece of ground was not dedicated for any public purpose at all, or if it was in fact dedicated for some other public purpose than for a public street, as, for instance, for a public park, common school, seminary, college, jail, court-house, church, cemetery, hospital, asylum, city hall, or market, then the plaintiff could not maintain his action. The piece of ground, however, was not dedicated at all for any public purpose in any manner, or by any word or act of any kind, and taking the statutes relating to the subject, and the map, field-notes and acknowledgment filed by the proprietor of the said addition, and they together show affirmatively that the piece of ground was not dedicated nor intended to be dedicated by the proprietor for a street.